[Civ. No. 27156.   Second Dist., Div. Four.   Apr. 12, 1963.]

VIVIAN F. COLEMAN, Plaintiff and Respondent, v. LADD FORD COMPANY, Defendant and Appellant.

---

*Formerly Rules on Appeal, rule 26.

Roeschlaub & McLellan and Clifford John Meyer for Defendant and Appellant.

Milton Wasserman for Plaintiff and Respondent.

BURKE, P. J.—In the interest of securing uniformity of decision and settling important questions of law the instant case was certified by the Appellate Department of the Superior Court for the County of Los Angeles, on its own motion, after decision, to this court. We ordered it transferred for hearing and further decision. (Cal. Rules of Court, rules 62 and 63.)*

The case arises out of the fraud of defendant in inducing plaintiff to purchase a new automobile upon representations that defendant would dispose of another automobile owned by plaintiff. Damages were awarded on the basis of the "loss of bargain" rule involved in fraud sale cases, interpreted by *Ward* v. *Taggart,* 51 Cal.2d 736 [336 P.2d 534], instead of the "out-of-pocket" rule declared in *Bagdasarian* v.

*Formerly Rules on Appeal, rules 62, 63.

*Gragnon,* 31 Cal.2d 744 [192 P.2d 935]. The decision of the appellate department of the superior court follows the reasoning of the *Ward* decision, and we transferred the case in order that it may be determined whether it qualifies as an exception to the *Bagdasarian* rule in order to avoid injustice in the particular case, or whether such "out-of-pocket" rule must be considered controlling as the uniform rule for all fraud sale cases.

At the time of plaintiff's purchase, she owned a used automobile on the purchase contract of which there remained a balance payable. Defendant's salesman represented to plaintiff that he had a buyer for her used car; that the balance due the finance company on the car would be paid off and she would have no further payments to make. Relying on these representations, plaintiff purchased the new car from defendant. The representations as to the old car were false and fraudulently made and the payments were never made. Later the finance company repossessed the used car, sold it, and the assignee of its claim obtained judgment against plaintiff for the balance of the purchase price and attorney's fee. Plaintiff did not elect to rescind her contract for the purchase of the new car, but brought suit for damages for fraud.

Defendant's office manager had overheard the statements made by its salesman to plaintiff and had stated, "that will be fine"; plaintiff was allowed to take the new car without a down payment and left her used car to be sold. The trial court found that the manager's knowledge was knowledge of the defendant corporation; the corporation was not an innocent seller and had profited by the sale of the new automobile to plaintiff. Judgment was granted in her favor for the total amount of the deficiency, attorney's fees and interest represented in the finance company's judgment against her in the sum of $1,322.04 and, in addition, for attorney's fees and court costs to defend such action, of $214, aggregating $1,536.04.

Appellant's first contention is that the written contract under which plaintiff purchased her new car expressly notified plaintiff that its salesman had no authority to make representations or promises not set forth therein and therefore judgment for damages for false representations of its salesman was error, citing *Speck* v. *Wylie,* 1 Cal.2d 625 [36 P.2d 618, 95 A.L.R. 760], and *Harnischfeger Sales Corp.* v. *Coats,* 4 Cal.2d 319 [48 P.2d 662]. As pointed out in the decision of the appellate department, those cases "are limited to prin-

cipals who are *innocent* i.e. who did not commit the fraud, who did not know of the agent's fraud, who did not participate in the fruits thereof. . . ." The knowledge of and express approval of the fraudulent misrepresentation by defendant's office manager were clearly the knowledge and approval of defendant corporation.

Historically, the measure of damages for fraud in real property transactions was generally based on the "loss of bargain" principle. (*Wood* v. *Niemeyer,* 185 Cal. 526, 532 [197 P. 795]; *Rogaff* v. *Bartles,* 115 Cal.App. 429 [1 P.2 1 517].) The "out-of-pocket" rule was made statutory by adoption of Civil Code section 3343 in 1935, and in *Jacobs* v. *Levin,* 58 Cal.App.2d Supp. 913, 917 [137 P.2d 500], the court stated that the ". . . 'out-of-pocket loss' rule was substituted for the 'loss of the bargain' rule." Under the decision in *Bagdasarian* v. *Gragnon, supra,* 31 Cal.2d 744, the plaintiff may recover only that which he is actually out-of-pocket, i.e., the difference, if any, between what the property is actually worth and the price he paid for it. This measure is stated in Restatement, Torts, section 549. It is also the federal rule. (*Sigafus* v. *Porter,* 179 U.S. 116 [21 S.Ct. 34, 45 L.Ed. 113].) The court has stated in *Bagdasarian, supra* (p. 762), "In view of the broad, general language of section 3343 of the Civil Code and the uncertainty in the law that existed both here and elsewhere prior to the adoption of that section, it is reasonable to conclude that the statute was enacted to provide a uniform rule for all fraud cases, and we can see no reason for refusing to follow the decisions which have applied it as the exclusive measure of damages." But the rigidity of this rule has been relaxed. In *Ward* v. *Taggart, supra,* 51 Cal.2d 736, the Supreme Court opened the door for such further court interpretation of the section as may be necessary to do justice.

The problems solved by *Ward* v. *Taggart, supra,* conduce to a retention of the theory therein adopted — a theory neither pleaded nor raised by the parties, but evolved by the court to apply under the circumstances presented in the case in order to do justice which under the application of the exclusive test previously announced in *Bagdasarian* would have been impossible. The theory applied is that of a combination of constructive trust — unjust enrichment and quasi-contractual relationships which will support an award of exemplary damages in addition to permitting recovery under the "loss of bargain" rule. Its effect was not to overrule *Bagdasarian*

but to interpret that ruling as being permissive of exceptions. *Ward* v. *Taggart, supra,* affords justice to litigants who would be otherwise denied relief. It also preserves punitive damages as a strong deterrent to unacceptable conduct by defrauding parties. The decision indicates a proper base in law or equity for each aspect of the multiple theory adopted.

Most persuasive against the purportedly restrictive rule set forth in *Bagdasarian,* that ''out-of-pocket'' loss should be the exclusive measure of damages, is the statement in 5 Williston, Contracts, section 1392, referring to such rule: ''. . . a fraudulent person can in no event lose anything by his fraud. He runs the chance of making a profit if he successfully carries out his plan and is not afterwards brought to account for it; and if he is brought to account, he will lose nothing by his conduct.''

Section 3343 of the Civil Code does not state that the out-of-pocket rule is the exclusive measure of damages for fraud. Accordingly this court upholds the decision of the trial court and the appellate department of the superior court in deciding that the rule announced in *Ward* v. *Taggart* reestablishes the right of recovery of damages other than upon the ''out-of-pocket'' rule in fraud sale cases; that such right is cumulative and alternative to that embraced by the rule in the *Bagdasarian* case; that the instant case is resolvable upon the theory presented in the *Ward* v. *Taggart* case.

The judgment of the municipal court is affirmed.

Jefferson, J., and Kingsley, J., concurred.